**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>Shirley T. Sherrod,<br><br>                   Debtor. | C/A No. 23-03221-EG<br><br>Chapter 13<br><br>**AMENDED ORDER OVERRULING OBJECTION TO DEBTOR'S CLAIM FOR EXEMPTIONS**[1] |

      **THIS MATTER** comes before the Court upon the Objection of Michael S. Sherman, D.O., P.C., and Michael S. Sherman, D.O. (collectively, "Sherman") to Shirley T. Sherrod's ("Debtor") Claim for Exemptions ("Objection to Exemptions").[2]  A hearing on the Objection to Exemptions was held on March 7, 2024.  Counsel for Debtor, the Chapter 13 Trustee, and counsel for Sherman were present.  Following legal arguments, the Court took the matter under advisement.[3]

      This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Pursuant to Fed. R. Civ. P. 52, which is made applicable to this contested matter by Fed. R. Bankr. P.

---

[1] This Order is being amended to correct a typographical error in footnote 23.
[2] ECF No. 25, filed on Jan. 24, 2024.  The Chapter 13 Trustee also filed an Objection to Exemption (ECF No. 20) that was later withdrawn prior to the scheduled hearing.
[3] Debtor arrived at the Court but fell ill and had to be transported to the hospital by ambulance.  Interestingly, based on a review of the pleadings filed in this case, which attached exhibits of orders, pleadings, and affidavits filed in the ERISA Litigation (defined herein), it appears that there have been several prior incidents of Debtor falling ill or suffering from fainting spells at hearings or depositions over the long-winded litigation between her and Sherman.  The Court was informed by marshals who were present outside the courtroom and assisted Debtor that, according to the emergency medical services, Debtor's blood pressure was low, and she was experiencing heart arrhythmia.

7052 and 9014(c), the Court makes the following findings of fact and conclusions of law as set forth below.[4]

## FACTUAL BACKGROUND

Debtor filed a Chapter 13 voluntary petition on October 15, 2023, commencing this case (the "Petition Date"). This is Debtor's fourth bankruptcy case.[5] In Part 4 of her Schedule A/B, Debtor disclosed her property interest in a retirement or pension account described as "Shirley T. Sherrod, M.D, P.C. 401(k) account."[6] Schedule B classified the type of account as "ERISA"—in reference to the Employee Retirement Income Security Act of 1974 ("ERISA")—and listed the estimated value of her interest as $1,800,000.00. Debtor's Schedule C claims two state law exemptions for the full amount of her interest in the pension fund under S.C. Code Ann. § 15-41-30(A)(11)(e) and (14).[7] Debtor's Schedules listed secured creditors with total claims of $1,432,706.67 (including Sherman with a judgment lien listed as disputed in the amount of $1,312,706.67), and unsecured claims of $6,017.00. The bar date for creditors to file claims was January 3, 2024, except for governmental agencies, whose bar date is set for April 22, 2024. Claims totaling $1,880,220.26 were filed in the case, with L.J. Consulting Services asserting the only secured claim in the amount of $171,514.24. Sherman

---

[4] To the extent the following findings of fact are conclusions of law, they are adopted as such, and vice versa.

[5] On May 24, 2011, Debtor filed a Chapter 13 bankruptcy case (Case No. 11-21975) in the Bankruptcy Court for the Northern District of Illinois, which was dismissed for failure to make the required plan payments. She then refiled under Chapter 11 in the Northern District of Illinois on March 13, 2014 (Case No. 14-08950), but the case was dismissed for cause three months later. Debtor filed for Chapter 13 relief in this District on October 8, 2019 (Case No. 19-95309-jw), and the case was dismissed on December 2, 2020.

[6] Debtor's Schedule C also describes the property interest as a 401(k) account. The classification of her retirement account as a 401(k) appears to be a mistake, as subsequent filings from Debtor and other parties have identified the interest as funds held in a pension plan.

[7] Like Schedule A/B, Schedule C lists the exempt property interest as "ERISA: Shirley T. Sherrod, M.D, P.C. 401(k) account." This again appears to be a mistake, and the Court will treat the claim for exemption as claiming that Debtor's Pension Plan interest is exempt from property of Debtor's estate.

2

is Debtor's main creditor and filed an unsecured claim in the amount of $1,556,114.71 (the "Sherman Claim").[8]

### A. Prior and Pending Litigation

Sherman and Debtor have a long and tortured history spanning over the past 16 years.[9] The Sherman Claim arises out of protracted litigation which started soon after Sherman purchased Debtor's medical practice in 2008. Approximately five months after the transaction, Sherman sued Debtor for breach of contract, commencing state court litigation in Michigan (the "Michigan Litigation"). The Michigan Litigation continued for more than a decade, ultimately concluding in September of 2019—after the award of various judgments and appeals affirming the lower courts' decisions. The combined amount of the judgments arising out of the Michigan Litigation is the basis of the Sherman Claim.

As part of the medical practice that Debtor sold to Sherman, an ERISA-qualified retirement plan named the Shirley T. Sherrod M.D., P.C. Target Benefit Pension Plan and Trust (the "Pension Plan") was established to provide benefits to certain employees of the medical practice and Debtor. The Pension Plan has also been the subject of ongoing litigation (the "ERISA Litigation") brought by the Department of Labor (the "DOL") in the U.S. District Court for the Northern District of Illinois ("Illinois District Court").[10] The DOL filed the complaint in the ERISA Litigation seeking, among other things, to: (a) remove Debtor and the Pension Plan's previous administrator (Leroy Johnson) from any fiduciary position in

---

[8] POC No. 4-1, filed Jan. 3, 2024.
[9] The facts stated in this Order are drawn from court pleadings and orders from the various litigation in Illinois and/or Michigan courts, all of which are attached as exhibits to pleadings filed in this case. The Court takes judicial notice of these filings.
[10] *See Walsh v. Sherrod et al.*, C/A No. 1:16-cv-04825. Both Debtor and the "Shirley T. Sherrod, M.D., P.C. Target Pension Plan" are among the named Defendants.

3

connection with the Pension Plan and enjoin him from serving as fiduciary for any ERISA plan; (b) appoint an independent fiduciary to administer the Pension Plan, conduct an accounting, issue distributions, and terminate the Pension Plan; and (c) allow for setoff of Debtor's Pension Plan account for all fees and expenses of the independent fiduciary. In March of 2022, the Illinois District Court entered an order granting the DOL's motion for summary judgment, which was then supplemented by a subsequent order in June of 2022. Through these orders, the Illinois District Court granted the DOL's request for injunctive relief, removing Debtor and Leroy Johnson as fiduciaries of the Pension Plan and appointing AMI Benefit Plan Administrator, Inc. ("AMI") as the independent fiduciary tasked with administering the Pension Plan and, ultimately, liquidating and distributing the plan's assets to its eligible beneficiaries. As reflected on the ERISA Litigation docket, the Illinois District Court's decisions were appealed and subsequently affirmed by the Seventh Circuit. Debtor attempted to appeal the Circuit Court's decision, but the Supreme Court denied *certiorari* on or about December 11, 2023. Sherman also attempted to intervene in the ERISA Litigation, and that matter is still under advisement before the Illinois District Court.

On January 2, 2024, Debtor filed an adversary proceeding in this Court against AMI seeking turnover of the right to funds being held in the Pension Plan, which Debtor claims is property of the estate.[11] AMI filed a motion to dismiss the adversary proceeding or, in the alternative, for an order of abstention, which is scheduled to be heard on March 20, 2024.[12]

**B. Proposed Chapter 13 Plan**

---

[11] Adv. Pro. No. 24-80002-eg.
[12] Adv. Pro. No. 24-80002-eg, ECF No. 7. Debtor filed an objection to the Motion to Dismiss. *See* ECF No. 13.

4

Debtor filed a Chapter 13 plan on November 17, 2024.[13] Part 2.1 of Debtor's proposed Chapter 13 Plan[14] proposes for Debtor to pay $50 a month for 60 months and further provides in Part 2.4:

> The Debtor is involved in ongoing litigation concerning her rights as it pertains to her interest in the Shirley T. Sherrod, MD PC Target Benefit Pension Plan and Trust (the "Plan"). The Debtor believes that her current account balance is in excess of One Million Seven Hundred Thousand ($1,700,000.00) Dollars. These funds are held in an ERISA qualified plan and the Debtor has claimed 100% of this account as exempt. The United States District Court for Northern District of Illinois Eastern Division (*Walsh v. Sherrod*, 1:16-cv-04825) has effectively frozen the Debtor's rights and access to her funds. The Debtor believes that this litigation will be concluded during the pendency of this Chapter 13 plan. Once the Debtor regains possession of her exempt funds, she will make a lump sum payment to the Chapter 13 Trustee in the amount of $146,687.50, being the liquidation value of her non-exempt assets.

Both the Chapter 13 Trustee[15] and Sherman[16] objected to the Plan as being unconfirmable pursuant to 11 U.S.C. § 1325, and a confirmation hearing was held on the same date as the hearing on the Objection to Exemptions. The Court denied confirmation and entered an order indicating that the Chapter 13 plan did not comply with the requirements for confirmation due to feasibility issues and giving Debtor until March 18, 2024, to file an amended plan.[17]

**C. Objection to Exemptions**

Sherman filed an objection to Debtor's claim of exemptions on January 24, 2024.[18] In the Objection to Exemptions, Sherman first argues that Debtor did not effectively claim the exemptions in the Pension Plan, as Schedule C referred to "ERISA: Shirley T. Sherrod, M.D.,

---

[13] ECF No. 14.
[14] ECF No. 14, filed on Nov. 17, 2023.
[15] ECF No. 16, filed Dec. 29, 2023.
[16] ECF No. 18, filed Jan. 3, 2024.
[17] ECF No. 51, entered on March 7, 2024.
[18] ECF No. 25. The deadline to object to exemptions was January 10, 2024. On that date, Sherman filed a motion seeking the extension of time to file an objection to the claimed exemptions, which was granted. *See* ECF No. 22. Accordingly, the Objection to Exemptions is timely. Additional briefing was also filed at the Court's request. *See* ECF Nos. 45 and 49.

5

P.C. 401(k)" instead of the correct name of the Pension Plan, which is not a 401(k) account. Sherman also argues that because, as the Supreme Court of the United States held in *Patterson v. Shumate*, a debtor's interest in an ERISA-qualified retirement plan is excluded from the bankruptcy estate, 11 U.S.C. § 522(b)(1) cannot be used to claim an exemption for an interest in the Pension Plan which is covered by ERISA and is not part of Debtor's estate.  Lastly, Sherman claims that the interest would potentially not qualify for exemption under S.C. Code Ann. §§ 15-41-30(A)(11)(e) or (14) if the Illinois District Court orders AMI to distribute funds to everyone *except* the Debtor, at which point the Pension Plan would no longer be ERISA-qualified.

In her response to Sherman's objection,[19] Debtor asserts that the Illinois District Court in the ERISA Litigation impliedly found that the Pension Plan was an ERISA-qualified plan because it applied ERISA law in adjudicating the case.  Debtor argues that her interest in the Pension Plan is specifically exempt under South Carolina state law—S.C. Code Ann. § 15-41-30(14)—and claims that pursuant to 11 U.S.C. § 522(b)(1), "property" can be claimed as exempt from "property of the estate," even if that property is not property of the estate under 11 U.S.C. § 541 to begin with.  Debtor further contends that even if the Pension Plan's qualification under ERISA is negated by the Illinois District Court judgment, Debtor's interest in the pension fund would still fall within South Carolina's exemptions—including S.C. Code Ann. § 15-41-30(11)(e)—because exemptions pursuant to 11 U.S.C. § 522(b)(3)(A) are established as of the petition date.

## CONCLUSIONS OF LAW

---

[19] ECF No. 30, filed on Feb. 13, 2024.  *See also* ECF Nos. 43 and 49.  Notably, in the supplemental brief that Debtor filed on February 23, 2024, no mention was made of the second argument as it pertains to the applicability of S.C. Code Ann. § 15-41-30(11)(e).

6

For the reasons set forth below, the Court overrules the Objection to Exemptions because the Pension Plan is not property of the estate.

The filing of a bankruptcy case creates an estate as of the date the petition is filed. Section 541 defines property of the bankruptcy estate for all chapters of the Bankruptcy Code and, in subsection (a)(1), provides that a debtor's estate is comprised of, among other things, "*[e]xcept as provided in subsections (b) and (c)(2) of this section*, all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (emphasis added); *In re Holt*, 497 B.R. 817, 824 (Bankr. D.S.C. 2013). Section 541(b), in turn, specifies the types of property that are excluded from the broad definition of "property of the estate" provided by § 541(a). In addition, § 541(c)(2) provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title." In a chapter 13 case, § 1306(a) expands the scope of § 541 to include in the estate "all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first". 11 U.S.C. § 1306(a)(1).

Once a bankruptcy estate is created, § 522(b) of the Bankruptcy Code allows debtors to exempt certain property from the estate. In relevant part, §522(b) provides:

> Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection. . . .
>
> > (2) Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.
> >
> > (3) Property listed in this paragraph is—

7

> (A) subject to subsection (o) and (p), any **property** that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is **applicable on the date of the filing of the petition** to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place;
> . . .
>
> (C) retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986.

11 U.S.C. §522(b)(1) (emphasis added).  Thus, § 522(b)(1) offers debtors a choice between utilizing either the exemptions set forth in § 522(d)—which South Carolina has opted out of—or those provided by federal non-bankruptcy law and state law.  11 U.S.C. § 522; *In re Jordan*, 624 B.R. 147, 149 (Bankr. D.S.C. 2020).  With limited exceptions, property that is properly exempted "is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case . . .."  11 U.S.C. § 522(c).

Relevant to the case before us, Debtor claims an exemption for the Pension Plan in the amount of $1,800,000.00 pursuant to S.C. Code Ann. § 15-41-30(A)(11)(e) and (14).[20] Section 15-41-30(A) of the South Carolina Code provides:

> The following real and personal property of a debtor domiciled in this State is exempt from attachment, levy, and sale under any mesne or final process issued by a court or bankruptcy proceeding:
> . . .
>
> (11) The debtor's right to receive or property that is traceable to:
> . . .

---

[20] No dispute was raised in the pleadings or at the hearing as to the applicability of South Carolina exemption statutes to this case.

8

> (e) a payment under a stock bonus, pension, profit sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, unless:
>
>> (i) the plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under the plan or contract arose;
>>
>> (ii) the payment is on account of age or length of service; and
>>
>> (iii) the plan or contract does not qualify under Sections 401(a), 403(a), 403(b), or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), or 409).[21]
>
> . . .
>
> (14) The debtor's interest in a pension plan qualified under the Employee Retirement Income Security Act of 1974, as amended.

"An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor." *Owen v. Owen*, 500 U.S. 305, 308 (1991). Accordingly, a debtor can only withdraw a property interest from the bankruptcy estate using an exemption if such property is already included in the estate. *In re Sanford*, No. 09-01116-JW, 2009 WL 8762883, at *7 (Bankr. D.S.C. Oct. 1, 2009) (citing *In re Leahy*, 370 B.R. 620, 624 (Bankr. D. Vt. 2007); *In re Sewell*, 180 F.3d 707, 710 (5th Cir. 1999)) (holding that to the extent that §541(b)(7) applied, the issue of whether a pension may be claimed as exempt did not need to be determined in order to rule on an objection to exemption because "property must first be property of the estate before it can be exempted"). Thus, before the Court can assess Debtor's claim of exemptions as it pertains to the Pension Plan, it must first make a preliminary determination of whether Debtor's interest in the Pension Plan is property included in the bankruptcy estate.

---

[21] Thus, it appears that if the payment or property that is traceable to a payment covered by subsection (e) is on account of age or length of service and the plan or contract was established by an insider that employed the debtor at the time his or her rights arose, the right to such payments is *not* exempt *unless* the plan or contract qualifies under section 401(a), 403(a), 403(b), or 409 of the Internal Revenue Code.

9

While neither Debtor nor Sherman sought to introduce evidence reflecting the anti-alienation provision in the Pension Plan, the parties do not appear to disagree that the Pension Plan is an ERISA qualified plan as of the Petition Date and as recently as the date of the hearing.[22] The law is settled that such a plan may be excluded from property of the bankruptcy estate pursuant to § 541(c)(2).[23] The Supreme Court has interpreted this subsection to mean that an interest in an ERISA qualified pension plan, which is required to have an anti-alienation provision enforceable under the Employee Retirement Income Security Act, is excluded from the bankruptcy estate. *Patterson v. Shumate*, 504 U.S. 753 (1992) (finding ERISA to be "applicable non-bankruptcy law" for the purposes of § 541(c)(2) in a case where the Chapter 7 trustee sought to recover the debtor's interest in an ERISA plan for inclusion in the bankruptcy estate). Thus, "if the right to receive the payment is attributable to the debtor's interest in an ERISA-qualified plan, there is no need to claim an exemption." 4 Collier on Bankruptcy ¶ 522.09 (16th ed.), Lexis (database updated Dec. 2023); *see also In re McBride*, 347 B.R. 585 (Bankr. S.D. Tex. 2006) (drawing distinction between property that is "excluded" and property that is "exempted" in concluding that debtor's entire interest in ERISA-qualified savings plan, including interest on account of after-tax contributions debtor made, was excluded from property of chapter 7 estate). The court in *McBride* ultimately held:

> Having determined that the Debtor's after-tax contributions to the Savings Plan are excluded from the bankruptcy estate, this Court does not reach the issues of whether the Savings Plan constitutes a spendthrift trust under Texas state law and whether after-tax contributions are exempt pursuant to § 42.0021 of the Texas Property Code. It would be illogical to consider whether property that never enters the bankruptcy estate may be taken out of the estate.

---

[22] In addition to the arguments made in the pleadings filed with the Court, at the hearing, Sherman's counsel acknowledged on the record that the plan is ERISA-qualified—at least, for the time being.

[23] Neither party mentioned whether the Pension Plan or any distributions from it could similarly be excluded from constituting property of the estate pursuant to 11 U.S.C. §541(b)(7). While it is not clear why that section would not apply in this situation, the Court does not need to analyze the issue further as it concludes that the Pension Plan is not property of the estate at this time.

347 B.R. at 595; *see also Patterson*, 504 U.S. at 765-66 ("In light of our conclusion that a debtor's interest in an ERISA-qualified pension plan may be excluded from the property of the bankruptcy estate pursuant to § 541(c)(2), we need not reach respondent's alternative argument that his interest in the Plan qualifies for exemption under § 522(b)(2)(A)."). Because "[p]roperty which *may be exempted* from the bankruptcy estate becomes so *only after first having been property of the estate*," *McBride*, 347 B.R. at 588 (emphasis theirs), claiming an exemption under the South Carolina exemption statutes is unnecessary if Debtor's Pension Plan interest is not property of the bankruptcy estate in the first instance. *See McLean v. Central States, Southeast and Southwest Areas Pension Fund*, 762 F.2d 1204, 1208 (4th Cir. 1985) (concluding that, while pension interests are made expressly subject to exemptions in bankruptcy pursuant to 11 U.S.C. § 522(d)(10)(E), "[t]he fact that pension interests are in general made subject to exemption from bankruptcy estate property does not mean that some may not be included in estate property at all.").

Debtor argues that Sherman completely misconstrues § 522(b)(1), which, as set forth earlier, provides that a debtor may exempt "from property of the estate the property" listed in subsection (b)(2) and (3) of § 522 "[*n*]*otwithstanding section 541 of this title*." Debtor strictly construes the "notwithstanding" language and argues that § 522(b) "specifically provides that 'property' can be claimed as exempt <u>from</u> property of the estate, even if that property is not property of the estate under section 541 to begin with."[24] This argument can be interpreted in one of two ways. To the extent that Debtor is arguing that the exemption needs to be claimed in the bankruptcy case even if the property is not "property of the estate," that

---

[24] ECF No. 30.

11

argument is contrary to conclusions reached by various courts as discussed above. *See In re Bartholomew*, 214 B.R. 322, 328 (Bankr. S.D. Ohio 2001) (overruling trustee's objection to claim of exemption for a retirement plan benefit payable to the chapter 7 debtor on the basis that such was excluded from property of the estate, even though the debtor had taken all steps necessary to withdraw his funds pre-petition).[25]  Debtor's argument can also be read to contend that even if the Pension Plan is excluded from the bankruptcy estate at this time, if distributions were to be captured into the estate at a later time, the exemptions would still apply because the relevant date for determining the status of the applicable exemption is the Petition Date.  To that end, Debtor's argument appears more logical in that § 522(b)(1) exempts from property of the estate the property listed in subsection (2), which refers to "any property that is exempt under . . . State or local that is applicable on the date of the filing of the petition". *See In re Kim,* 257 B.R. 680, 689 (9th Cir. 2000) (finding that funds that were exempt from the chapter 7 debtor's bankruptcy estate as of the petition date did not lose exemption status once distributed from the retirement plan post-petition).  However, the Court does not need to reach the latter issue because neither the Pension Plan nor Debtor's future distributions from it are currently property of the estate.

If a debtor's interest in property is excluded from the bankruptcy estate at the time of the bankruptcy filing, a subsequent change in its form would not necessarily bring it into the estate unless another provision of section § 541(a) or § 1306[26] captures it as a post-petition asset. *Id.*; *McLean*, 762 F.2d at 1206-07 (noting that "a pensioner's interest in a trust fund that in the hands of the fund trustee is subject to an enforceable transfer restriction and is

---

[25] To be clear, even if the property does not fall within property of the estate under §541, state or federal exemptions could still apply to exempt them from attachment by creditors outside of the bankruptcy context.
[26] To be clear, the Court is not making any determination in this order that any distributions to Debtor from the Pension Plan would become property of the estate.

therefore not in that form § 541 estate property, *may* become estate property in a Chapter 13 plan once paid into the debtor under terms of the trust") (emphasis added); *Gorham v. Winkler (In re Winkler)*, 164 B.R. 728 (W.D.N.C. 1994), aff'd 46 F.3d 1130 (4th Cir. 1995) (stating that a debtor only loses the protection provided by a retirement plan's anti-alienation provision once the proceeds are distributed). In *In re Massenburg*, a chapter 7 trustee objected to the exemption claimed by the debtor for pension funds he received while he was a debtor in chapter 11, before the case was converted to chapter 7. 508 B.R. 362, 366-67 (Bankr. D. Md. 2014). While no dispute existed in the case as to the fact that the funds were from an ERISA-qualified pension plan, the trustee relied on 11 U.S.C. § 1115 to contend that once the debtor received the pension funds post-petition, they ceased being subject to the anti-alienation provision in the plan; therefore, § 541(c)(2) no longer applied and thus the funds became property of the estate under § 1115. The Court ultimately concluded it did not need to resolve that issue and, even assuming that the trustee was correct that the funds became property of the estate, they were exempt under Maryland state law, which continued to apply even after the funds were distributed to debtor.

Sherman argues that current matters pending in the Illinois District Court *may result* in the Pension Plan being no longer subject to the ERISA protections which would make Debtor's claimed exemptions inapplicable. Specifically, Sherman contends that *should* distributions be made to other Pension Plan participants before Debtor receives them, the Plan would become a "plan without employees" and thus no longer eligible for ERISA protections. In that event, Sherman posits that Debtor's interest in the Pension Plan would no longer be exempt under South Carolina law. This argument, however, involves putting the proverbial "cart before the horse." Not only does Sherman assume what *could* happen in the ERISA

13

Case 23-03221-eg    Doc 57    Filed 03/15/24    Entered 03/15/24 10:36:12    Desc Main
Document      Page 14 of 15

Litigation, but he also assumes—without citing to any legal authority or advancing any argument to that effect—that Debtor's interest or distribution would become part of the estate under § 1306, that S.C. Code Ann. §15-41-30(14) would not apply to exempt the funds even thought it applied to the Pension Plan as of the Petition Date; and that the funds would not qualify for exemption under S.C. Code Ann. § 15-41-30(11)(e), 11 U.S.C. § 522(b)(3)(C), or any other applicable law.[27]

What is clear is that, in its current state, the Pension Plan is not property of Debtor's bankruptcy estate. What is not clear is when the funds will be distributed to Debtor, whether they will be rolled over into an IRA account, or what the outcome of the ERISA Litigation will be. The only issue for the Court to decide is whether Sherman has met his burden of proving that the exemptions are not properly claimed. *See* Fed. R. Bankr. P. 4003(c) ("[T]he objecting party has the burden of proving that the exemptions are not properly claimed."); *In re Brown*, 551 B.R. 780, 783 (Bankr. D.S.C. 2016).

Based upon the foregoing, Sherman's Objection to Exemptions for Debtor's interest in the Pension Plan is overruled on the basis that Debtor's interest is not property of the estate and, therefore, is not required to be exempted. Moreover, Sherman has not met his burden to prove that, when the funds leave the Pension Plan's corpus and are distributed to Debtor, the funds would become part of the estate or would not be subject to exemption. Accordingly, as

---

[27] These examples of what is being assumed by Sherman are not intended to limit possible arguments that could be raised. Without making any findings or conclusions as to what implications, if any, future changes in the Pension Plan interest may have in Debtor's bankruptcy case, the Court notes that courts have held that exemptions may be asserted in property that comes into a debtor's estate post-petition. *See In re Walley*, 525 B.R. 320, 325 (Bankr. E.D. Va. 2015) ("There is nothing in the language of §§ 1306 or 541 to suggest that Congress intended to limit an individual's exemptions to only that property of the estate owned at the commencement of the case and to deny the debtor the opportunity to assert any remaining allowed exemptions in property of the estate acquired after the bankruptcy filing."); *In re Boyd*, 618 B.R. 133, 172 (Bankr. D.S.C. 2020).

to the distributions, the Court overrules Sherman's Objection to Exemptions without prejudice.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**03/15/2024**



Entered: 03/15/2024

Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

15